RINDLES, Respondent, v. BORDEWYK, Appellant.
(139 N. W. 113.)

**1. Sales — Sales by Auctioneer — Payment — "Secured Bankable Notes."**

Where defendant agreed with plaintiff to sell his personal property at public auction, the proceeds to be in cash or good, secured bankable notes, the phrase "secured bankable notes" meant commercial paper immediately convertible into cash, and defendant was in effect authorized only to accept cash for the purchase price, and his acceptance of the unpaid notes of plaintiff was unauthorized and entitled plaintiff to recover from defendant the purchase price.

**2. Exemptions—Set-off Against Exemptions.**

Where plaintiff was entitled to recover from defendant the purchase price of exempt property, defendant cannot defeat plaintiff's recovery by setting off his claims on notes executed by plaintiff, since the exemption attaches to plaintiff's judgment for proceeds of exempt property as well as to the property itself; and the statute relating to counterclaims must be construed with reference to exemption statutes, which are liberally construed.

**3. Statutes—Exemptions—Liberal Construction—Counterclaims.**

Exemption statutes are to be liberally construed, and effect given to the legislative intent, though seemingly contrary to the letter of the statute relating to counterclaims.

(Opinion filed December 14, 1912.)

Appeal from Circuit Court, Douglas County. Hon. R. B. TRIPP, Judge.

Action by A. J. Rindles against J. W. Bordewyk, for proceeds of purchase money for personal property sold for plaintiff by defendant at public auction. From a judgment for plaintiff, defendant appeals. Affirmed.

*Walker & Gurley,* for Appellant.

We take it that the rule is unquestioned that no proof can be offered or received of matters not put in issue by the pleadings. That a party will not be allowed to introduce evidence to prove a cause of action different from the one set out in the complaint. That "proofs without averments and averments without proof are equally unavailing." Castle v. Persons, 117 Fed. 835-843; McLauren v. Cronley, 90 N. C. 50; Richards v. Greene, (Ariz.) 32 Pac. 266; 31 Cyc., 680, et seq. and cases cited.

Was there an express agreement between plaintiff and defendant whereby defendant agrees to sell the property at public sale on commission, for cash or secured notes, and turn over the proceeds to the plaintiff?

Did defendant sell said property and receive therefor the sum of $233.00 cash, which he has refused to turn over, except the sum of $17.00? We respectfully contend that plaintiff has utterly failed to prove either of these propositions, and that therefore, there is no evidence in this cause to support the decision of the court, its finding of a contract, and the judgment for the plaintiff.

We submit to the court, first: "That there is absolutely no evidence of any contract between the plaintiff and defendant, and the evidence shows that plaintiff never employed defendant to sell the property in question, never listed it with defendant for sale, and had no agreement with defendant relative to the sale of the property whatever."

The testimony of the plaintiff, Rindles, himself, shows that he never saw defendant before the sale, except on the morning of the day of the sale when he asked defendant for $2.00, and said he would repay him after the sale; that plaintiff listed his property with George S. Culver for sale, and whatever contract or agreement he had with any person relative to the selling of the personal property was, necessarily, with George S. Culver. But plaintiff contends, and the court evidently held the same view, there was an "implied contract" between plaintiff and defendant.

"If the declaration be upon a special contract, the contract offered in evidence must correspond in substance and in terms with the one laid in the declaration. Variance in this respect is fatal, if insisted upon. So a party who bases his right to recover solely upon the breach of a special contract cannot recover upon proof of an implied one." 4 Cyc. 356; Amacost v. Lindley, (Ind.) 19 N. E. 138; Bartlett v. Pittsburgh Ry. Co., 94 Ind. 339; Eyser v. Weissgerber, 2 Iowa, 463; Mayer v. Ver Buyck, (Neb.) 64 N. W. 691; Ornski v. Menger, (Tex.) 39 S. W. 288.

Second. The evidence discloses the facts that, not only was there no contractual relations between the plaintiff and defendant, but that defendant was not present at the sale and had nothing to do with the sale or delivery of the property. That the sale was

run under the direction and authority of the Business Men's League of Corsica, South Dakota. (See offer of proof by defendant). And that C. Beukelman acted as the auctioneer in charge of the sale and George S. Culver, the person with whom the plaintiff by his own testimony, listed the property, was the clerk at the place of the sale, who made the memorandum of sale, and supervised the delivery of the property to the purchaser.

Third: The evidence wholly fails to support the allegation the "defendant received the sum of $233.00 cash," or any other sum whatever. The evidence without controversy, discloses that after the sales were made, memorandums thereof were sent to the defendant Bordewyk, that this occurred as to the propery in question; that after the sale and delivery of the property in question to Vis & Co., Markus, member of that firm, went to the defendant and gave him the notes in question for the purpose of offsetting the purchase price, and that he never gave defendant any other thing whatever for the property purchased by his firm. As this action is one upon express contract, and as one of the essential averments of the complaint is that defendant received the sum of $233.00 cash, a recovery for the plaintiff could only be had upon proof of this fact.

In this case there could be no recovery as the defendant offered, before the trial and also in open court, to turn over to the plaintiff everything that he had received in settlement from Vis & Co. for the property purchased by them. This proposition is sustained by the following authorities: Rand v. Nesmith, 61 Me. 111; Belden v. Persons, 78 Ill. 449; Frothingham v. Moore, 45 N. H. 545.; Robinson v. Corn Exchange, etc., 1 Rob. 14; Falton v. Vesella, 27 R. I. 177; Deems v. Neel, 1 Nott & M. 210; Richards v. Budd, 76 Fed. 710.

So in an action for money had and received, a recovery can be had only when it is proven that money has been received by the defendant which in equity plaintiff is entitled to; and a recovery cannot be had when the proof discloses that defendant received something other than money or its equivalent. Cannon v. Maull, (Conn.) 4 Harr. 223; Knickerbocker Ice Co. v. Murphy, 59 Ill. App. 39; Dana v. Barrett, (Ky.) 3 J. J. Marsh, 6; Fogg v. Towle, 59 N. H. 117; Allen v. Brown, 51 Barb. 86; Moyer v.

Shoemaker, 5 Barb. 319; Beardsley v. Root, (N. Y.) 6 Am. Dec. 386; Baltimore, etc., Ry. Co. v. Burke, 47 S. E. 824 (Va.); McLachlin v. Evans, (Eng.) 1 Y. & J. 380; Beals v. See, (Pa.) 49 Am. Dec. 573; Wilson v. George, 10 N. H. 445.

Setoff or counterclaim.

A purchaser at auction sale may set off against the auctioneer, suing for the price, a debt due him by the owner of the goods. Cyc. Vol. 4, p. 1050; Blum v. Torre, S. C. Riley, 153; Coppin v. Craig, 2 E. C. L. 345.

If, in the case at bar, the purchaser could have set off the debt of plaintiff, Rindles, in a suit brought for the purchase price, the clerk, to whom these obligations have been set over, and who, for the purposes of the action, stands in the shoes of the purchaser, can certainly use them as a set off or defense. The right of set off under the Code is given by sections 126 and 127, Code of Civil Procedure. Can this right be defeated by the provisions of 344 et seq., Civil Procedure, relating to the subject of exemptions? Or was it ever contended by the Legislature that the right of set off should be subordinate to and liable to be defeated by the statute of exemptions? We believe not, and think that a careful examination of the statute will demonstrate that this construction is correct. The provisions of our law relating to set off and counterclaim as applied to this case, are, substantially, as follows: Any litigant has the right to a set off or counterclaim in an action arising on contract, "any other cause of action arising also on contract and existing at the commencement of the action." And a little further along in the Code, relating to judgments, it provided that the court must give judgment for the defendant if he establishes his counterclaim in an amount greater than claimed by plaintiff in the complaint. Northwestern Port Huron Co. v. Iverson, 22 S. D. 314, s. c. 133 A. S. R. 920; McHard v. Williams, 8 S. D. 381; Laney v. Ingalls, 5 S. D. 183; Caldwell v. Ryan, 210 Mo. 17; Kepner v. Pierce, 5 Ohio Cir. Ct. 488, affirmed by the Supreme Court in 44 N. E. 1143; Serhant v. Haker, (Ohio) 76 N. E. 943. See, also, Temple v. Scott, 3 Minn. 419; Corbally v. Hughes, 59 Ga. 493; Lynn v. Stanley Creek Cotton Mills, (N. C.) 41 S. E. 877; Mallory v. Norton, 21 Barb. 424; Knabb v. Drake, 23 Pa. State, 489.

Nor do we think that this rule is overthrown or abrogated by the case of Long v. Collins, decided by our own Supreme Court. In this connection we wish to again call the court's attention to section 310, Subdiv. 2, Code Civil Procedure, which reads as follows: "If a counterclaim established at the trial exceed the plaintiff's demand, so establishe l, judgment for the defendant must be given for the excess; and the court may grant to the defendant any affirmative relief to which he may be entitled."

Section 326 Civil Procedure, which provides for the setting off of judgments, is as follows: "Mutual final judgments may be set off, pro tanto, the one against the other, by the court upon proper application and notice."

It will be noticed that the section relating to the giving of judgment on the counterclaim is mandatory on the court in case the counterclaim in excess of plaintiff claim is established, for the reading is "judgment for the defendant must be given," while the matter of setting off judgments is somewhat discretionary with the court, and this section does not change the old equitable rule of the setting off of judgments in chancery. See Cleveland v. McCanna, 7 N. D. 455; Long v. Collins, 15 S. D. 262.

What is the rule in the federal courts? The Bankruptcy act provides that a creditor of the bankrupt can set off, for full value, any indebtednes he may owe the bankrupt; yet, if the rule laid down in this case is law the bankrupt, or his trustee, could sue the debtor and recover the full amount, claiming the debt as "exempt property" and the creditor could then take his pro rata with the other creditors.

The purpose of the counter claim is well stated by this court in McHurd v. William, 8 S. D. 381, quoted with approval in Minneapolis Threshing Machine Co. v. Darnell, 13 S. D. at page 284.

Surely, if the very purpose of the statute is to avoid mulitiplicity of suits, plaintiff's "defense" of exemptions cannot be held a valid defense to defendant's counterclaim, for, by so doing, defendant would be put to the necessity if maintaining a separate action and this would avoid the very purpose of the statute and be contrary to its direct and explicit language.

The sale of the property in question occurred, we believe, on the 9th of January, 1909, the evidence showed that plaintiff was

fully advised by defendant as to just what had been received by him for such property on the same day, yet plaintiff, did not, at that time, give defendant notice that the property sold he claimed as his exempt property and also claimed the proceeds as exempt. This action was commenced in January, about the 20th day, yet a careful examination of the complaint fails to disclose that, at that time, plaintiff made any claim that the property sold or its proceeds were claimed by him as exempt.

Plaintiff's reply, so far as the paragraph setting up the purported defense of exemptions to which defendant's demurrer is directed is bad for the further reason that the exemption claimed therein by plaintiff is not an absolute but an elective exemption. See section 346, Code Civil Procedure, section 355 Code Civil Procedure.

Therefore, as he has failed by his pleading or sworn schedule accompanying it to schedule all his property his proposed defense is bad. Coppage v. Gregg, (Ind.) 27 N. E. 570.

*E. P. Wanzer,* for Respondent.

The action is based on sections 1487 to 1491, inclusive, of the Civil Code, relating to "factors," and I contend clearly imports an implied contract. It is not necessary to consider what would have resulted if the complaint had been attacked by a motion to make more specific; but it is certainly sufficient as against the objections now urged and is supported by the evidence. It is not alleged that the defendant received $233.00 cash on the sale of the property involved as argued by appellant.

The property was to be sold "at a price acceptable to plaintiff, and to pay over the proceeds thereof in cash or good bankable notes;" and that all of said property was sold for cash, that is, the defendant was in a position to demand cash or secured bankable notes. He did not have to accept old unsecured past due notes, and when he did so he flagrantly violated the terms on which the property in question was received for sale. The undisputed evidence shows the terms to have been:

"Sums of less than $10.00 cash; $10.00 and over time will be allowed to October 1, 1909, on secured bankable notes, at ten per cent interest."

Under section 1488, Civil Code, the defendant was bound to obey these clearly defined terms of sale and had no right whatever

to deviate therefrom and accept in payment something different.

"Money is always demandable as the ordinary means of payment when there is no agreement providing for payment in property, as well as when there is such an agreement, but no tender by the debtor. Farmers L. & Trust Co. v. Can. & St. L. Co., (Ind.) L. R. A. 11, 740.

In this case there was no tender of secured bankable notes, and, therefore, the plaintiff had a perfect right to sue for payment in cash.

After these matters were fully gone over and it was apparent the decision of the court was adverse to the defendant, he asked leave to amend his answer, which was granted, and he then set up the notes before mentioned as a coutnerclaim, this was the first time there was any intimation or possibility of the plaintiff being deprived of his right to the exemption allowed the head of a family by the statutes of this state and presents the only question which I consider is now before the court, and that is: Can a counterclaim be maintained in this state, so as to defeat the plaintiff of his statutory right to exemptions?

The question of the right of a party to set off a judgment against another in such a manner as to defeat the exemption laws, is fully discussed in the case of Cleveland v. McCanna, (N. D.) 75 N. W. p. 908.

Our own Supreme Court cites this North Dakota case with approval in the case of Long v. Collings, 88 N. W. p. 571.

The respondent contends that the statute of the state relating to exemptions and the law as defined by our Supreme Court, above cited, cannot be disregarded and violated by simply taking a roundabout way in an effort to evade the question.

It must be conceded under the decisions of our own Supreme Court, that if the claim of the respondent had been reduced to judgment and the counterclaim of the appellant had been reduced to judgment and the appellant then attempted to set off his judgment as against the respondent's judgment and the respondent claimed his judgment as exempt, the appellant could not succeed in doing so. Now, can the appellant accomplish exactly the same thing by pleading it as a counterclaim?

We think not. The fact that this may be a new question or a new way of raising an old and well settled principle, is of little importance in reaching a conclusion in the case.

Our contention is that there was no occasion for the respondent to claim his exemptions until the case had reached a position where it became apparent that unless claimed, it might be forfeited and as the issue was presented by a counterclaim, the only way to meet it was by a reply.

It was not at all necessary to set out the individual items of property owned by respondent, it was alleged that he did not own property in all, including the property sold at the sale, which was of the value of $750.00.

The constitutional provision, the exemption law, and the statute relating to counterclaims must be construed together. In doing this so as to give the Constitution its superior force and the exemption statute the favorable operation extended to those laws, the right of counterclaim in this case must be denied.

This view, I think, is in line with the great weight of judicial authority. In Smith v. Sills, 126 Ind. 205, 25 N. E. 881, it is adjudged that "In an action on a promissory note, defendant pleaded, by way of set off, plaintiff's indebtedness to him, exceeding the note sued on; to which plaintiff replied that he was a resident householder of the state, and had less property than the law exempted from execution, and claimed the note in suit as exempt. Held, in demurrer, that the reply was good. A debtor may rightfully claim a promissory note as exempt from execution, although the maker holds notes or judgments against him."

To the same effect see, Coffing v. Dungan, 6 Ind. App. 386, 33 N. E. 815; Id. 6 Ind. App. 388, 33 N. E. 816; Puett v. Beard, 86 Ind. 172, 44 Am. Rep. 280; Millington v. Laurer, 89 Iowa, 322, 56 N.W. 533, 48 Am. St. Rep. 385; Mulliken v. Winter, 63 Ky. (2 Duv.) 256; Wagner v. North Furniture & Carpet Co., 63 Mo. App. 206, 1 Mo. App. Rep. 756; William Deering & Co. v. Ruffner, 32 Neb., 845, 49 N. W. 771, 29 Am. St. Rep. 473; Curlee v. Thomas, 74 N. C. 51; Pickrell v. Jerauld, 27 N. E. 43, 1 Ind. App. 10, 50 Am. St. Rep. 192; Caldwell v. Ryan, 79 S. W. 743; 23 Century Dig., p. 166, section 134 and 9 Decennial Dig., p. 83, section 113.

"Laws exempting property from execution for payment of debts must be liberally construed." 52 Pac. Rep. 777; Junker v. Hustes, 113 Ind. 524, 16 N. E. 197.

"It is well settled that in an action for exempt wages or any other exempt chose in action, which the plaintiff claims as exempt, the defendant cannot defeat a recovery to the full amount by pleadings as a set off a debt due him from the plaintiff, though the exemption law may in terms exempt only from execution and attachment, or from execution merely." 12 Am. & Eng. Ency. 188; Draffin v. Smith, 63 Ark. 83; Smith v. Sills, 126 Ind. 205; Millington v. Lauer, 89 Iowa, 322, 56 N. E. W. 533; State v. Finn, 8 Mo. App. 262; Deering v. Ruffner, 32 Neb. 845, 49 N. W. 771; Curlee v. Thomas, 74 N. C. 51; Wilson v. McElroy, 32 Pa. St. 82; Collier v. Murphy, 90 Tenn. 300; Howard v. Tandy, 79 Tex. 450; Beckman v. Manlove, 18 Cal. 388; Treat v. Wilson, 65 Kans. 729, 70 Pac. Rep. 893; Coppage v. Gregg, 1 Ind. App. 112; Butner v. Bowser, 104 Ind. 225; Collett v. Jones, 7 B. Mon. 586 Ex parte Hunt, 62 Ala. 1; Reynolds v. Haines, 83 Iowa, 342; Atkinson v. Pittman, 47 Ark. 464; Stagg v. Piland, 31 Tex. Civ. App. 245.

HANEY, J.  The learned circuit court found the facts to be as follows: "(1) That a short time prior to January 9, 1909, the plaintiff and defendant entered into an implied contract, whereby the defendant undertook and agreed to sell two mares and one two-seated buggy, the property of plaintiff, for him at public auction for a commission of 3 per cent., the same to be sold at a price acceptable to plaintiff and to pay over the proceeds thereon in cash or good, secured, bankable notes.  (2) That on the 9th day of January, 1909, the defendant sold all of said property at public auction at said town of Corsica, to one De Lang, the agent of H. Vis & Co., for the sum of $233, and thereupon delivered all of said property to said purchaser.  (3) That subsequently and on the same day, the defendant accepted from H. Vis & Co., in full payment and satisfaction of the purchase price for said property two certain promissory notes, in words and figures as follows, to-wit:   *   *   * That there was due and unpaid on said notes and owing from the plaintiff to H. Vis & Co. at the time of delivery of said notes to defendant the sum of $247. That the defendant accepted said notes from H. Vis & Co., with the express

agreement and understanding that the same were to be fully paid and satisfied by the delivery of the property of the plaintiff so purchased by H. Vis & Co. at said sale. (4) That subsequently and on the 9th day of January, 1909, the plaintiff demanded of the defendant settlement for said property in payment of the amount, for which the property sold, less his commission, in cash or good, secured, bankable notes. That the defendant failed and refused, and ever since has failed and refused, to make settlement with the plaintiff or pay him any amount on account thereof, except that on said 9th day of January, 1909, he gave the plaintiff two checks, one for $2 prior to said sale, and one for $15 subsequent to said sale, on which was indorsed, 'Advance money on sales.' (5) That the commissions and expenses of the defendant on said sale amounts to $11.65. (6) That on the 9th day of January, 1909, at the time of said sale, the plaintiff was a resident of the county of Douglas and state of South Dakota and the head of a family, that he owned no real estate, and that on that date he did not own personal property which in the aggregate, including the two mares and surrey, sold at said sale, was of the value to exceed the sum o $650."

[1] From the facts so found, the court concluded as follows: "(1) That the defendant violated the terms of the contract between himself and his principal, the plaintiff in this action, when he accepted the past-due notes of plaintiff as a compromise settlement for the property sold. (2) That by so doing, the defendant became personally liable to the plaintiff for the amount for which the property sold, less his commissions and expenses, the same as though said property had been sold for cash. (3) That the defendant is not entitled to recover on his counterclaim as against plaintiff's claim for exemptions. (4) That the plaintiff is entitled to judgment against the defendant in the sum of $204.35 with interest at 7 per cent. from January 9, 1909, and costs."

The only question requiring consideration is whether the facts as found by the trial court justify its judgment; such facts being within the pleadings and clearly sustained by the evidence. The phrase, "secured bankable notes," as employed in this case, means commercial paper immediately convertible into cash. Therefore the defendant was, in effect, authorized to accept only cash from the purchaser of his principal's property; he was legally and

morally bound to pay his principal. the proceeds of the sale in cash; and the plaintiff was under no obligations to accept any other consideration. By accepting plaintiff's notes without the plaintiff's authority or consent, the defendant disregarded his duty. If he did so for the purpose of defeating the plaintiff's lawful exemptions he acted in bad faith. But whatever may have been his motives, his position is the same as though he had sold the property for cash and refused to pay over the proceeds. Clearly, then, the plaintiff's cause of action—a debt of $233, less the defendant's commission and the sums received by the plaintiff on the day of the sale—was established.

[2, 3] It is contended, however, that the amount due on the plaintiff's notes, which exceeded the amount of the plaintiff's claim, should have been set off against the latter and the defendant given a judgment for costs and disbursements. The contention is untenable. It appears from the decision of the trial court that the plaintiff's property was exempt, in the sense that it was not subject to sale under an execution issued in an action founded on the notes described in the defendant's counterclaim. With respect to such claims, the plaintiff's demand represented the proceeds of exempt property. "A debtor's right to exemption cannot be defeated by a set-off by the creditor. To subject the debtor's demand to the creditor's set-off would be as much a legal seizure thereof as if a creditor had impounded it under process of garnishment on an execution or attachment. The legal effect would be the same in either case, and therefore it cannot be allowed. To allow a set-off against a judgment for trespass or conversion of the exempt property, or against an action for replevin of the property, would be a particularly inexcusable subversion of the exemption laws." 18 Cyc. 1463. What could be a more "inexcusable subversion of the exemption laws" than to allow an agent to deprive his principal of the benefits of such laws by his own unauthorized and wrongful conduct? This court has held that a judgment for conversion of property exempt from execution cannot be liquidated by having set off against it another judgment held by defendant as plaintiff's creditor, since the exemption attaches to the judgment for the proceeds of exempt property as well as to the property itself.

Long v. Collins, 15 S. D. 259, 88 N. W. 571. If the plaintiff's claim could not be offset by the defendant's, if both were in judgment, it should not be in this action. The statute relating to counterclaims must be construed with reference to the exemption statutes, which are to be liberally construed, and effect given to the legislative intent, though seemingly contrary to the letter of the statute relating to counterclaims.

The judgment of the circuit court is affirmed.